[Civ. No. 5124. Third Appellate District.—March 21, 1934.]

ARMANDO LUCCHESI, Petitioner, v. STATE BOARD OF EQUALIZATION et al., Respondents.

Charles Kasch for Petitioner.

U. S. Webb, Attorney-General, and Seibert L. Sefton, Deputy Attorney-General, for Respondents.

PLUMMER, J.—This cause is before us upon the application of the above-named petitioner for a writ of mandate to be directed to the respondents commanding them to issue a license to conduct a winery, manufacture and sell wine upon the payment of a fee of $10.

The record shows that the petitioner has presented an application upon a form prescribed by the respondents, and that all and singular the regulations of the State Board of Equalization have been complied with save as to the payment of the amount of the license fee demanded by the respondents and the giving of a bond for the payment of an excise tax of two cents a gallon upon all wine manufactured and sold by the petitioner.

This cause involves the construction of three acts of the legislature, to wit: The first act approved by the Governor on April 6, 1933; a second act approved by the Governor on April 27, 1933; and a third act approved by the Governor on June 3, 1933. The first act approved by the Governor, known as "Chapter 51, Statutes 1933, page 340", defines the liquors therein referred to as follows: " 'Beverage' means and includes any beer, lager beer, ale, porter, wine, similar fermented malt or vinous liquor and fruit juice, or other fermented beverage containing not less than one-half of one per cent, and not more than three and two-tenths per cent of alcohol by weight." This act also defines a "manufacturer" as one who brews, ferments or manufactures a beverage, as just defined. The second act contains the same definition of the liquor therein referred to as a beverage, and the "manufacturer" as any person who purchases, brews, ferments or manufactures such a. beverage. The second act also contains a number of provisions intending to regulate the sale of the beverage referred to, supplementing the provisions of the first act.

The licenses and the excise taxes provided for in the act known as "Chapter 51", *supra*, and "Chapter 178, Statutes 1933, page 625", would impose a license tax upon the petitioner in the sum of $100 per annum as a manufacturer of a beverage as defined in those acts. The act aproved by the Governor June 2, 1933, known as "Chapter 658, Statutes 1933, page 1697", imposed a license tax of $10 per annum upon a winery. The act just referred to contains a list of definitions, the only one of which involved herein reads as follows: " 'Wine' means any alcoholic beverage obtained by the fermentation of the natural contents of fruits or other agricultural products containing sugar."

Chapter 658, *supra*, contains in specific language no imposition of any excise tax upon the manufacture and sale of

wine; however, section 36 of chapter 658 provides as follows: "Nothing contained in this act shall be construed as repealing, superseding, or otherwise affecting any of those provisions relating to an excise tax on beverages containing alcohol, which provisions are found in an act entitled, 'An act to impose an excise tax on the manufacture and distribution of certain beverages, to provide for the collection and distribution thereof, to provide penalties for the violation thereof, and to declare that this act shall take effect as a statute immediately,' approved April 6, 1933, and an act entitled 'An act to levy an excise tax and to regulate the manufacture, distribution and sale of certain beverages; to provide for the licensing of the manufacture, distribution and sale; to provide penalties for the violation of this act and to provide that this act shall take effect immediately,' approved April 27, 1933."

On the part of the petitioner it is contended that the legislature has failed to impose any license tax in excess of $10 per year upon anyone who engages in the manufacture and sale of wine, and has imposed no excise tax whatsoever upon the wine manufactured and sold. In other words, that the legislature, by defining the word "beverage", as containing a limited alcoholic content, as herein stated, has confined the licensing and excise taxing provision of the acts referred to as being imposed upon a beverage containing less than 3.2 per cent of alcohol by weight, and that any beverage containing in excess of 3.2 per cent of alcohol by weight is entirely untaxed. That the legislature intended any such result by reason of the enactment of the three chapters to which we have referred needs no discussion. The only question before us is whether the legislative intent has been expressed in such a manner that the courts may give it effect.

Section 1858 of the Code of Civil Procedure, reads: "In the construction of a statute or instrument, the office of the judge is simply to ascertain and declare what is in terms or in substance contained therein; not to insert what has been omitted, or to omit what has been inserted, and where there are several provisions or particulars, such a construction is, if possible, to be adopted, as will give effect to all."

Section 1859 of the Code of Civil Procedure, is in these words: "In the construction of a statute, the intention of

the legislature, and in the construction of the instrument, the intention of the parties is to be pursued, if possible, and when a general and a particular provision are inconsistent, the later is paramount to the former, so a particular intent will prevail over a general one that is inconsistent with it.''

In 23 California Jurisprudence, page 725, the rule as declared by the courts is set forth in these words: ''It is a cardinal rule that statutes are construed according to the intention, or at least according to the apparent or evident intention or purpose of the lawmakers. Such intention controls if it can be reasonably ascertained from the language used. Indeed, it has been said that the legislative intent in indicating a law is the law itself. Accordingly, the primary rule of statutory construction to which every other rule as to interpretation of particular terms must yield, is that the intention of the legislature must be ascertained, if possible, and once ascertained, will be given effect, even though it may not be consistent with the strict letter of the statute.'' ''In other words, as is declared by the code in the construction of a statute, the intention of the legislature is to be pursued, if possible. Certainly, the language of a statute should never be so construed as to nullify the will of the legislature, or to cause the law to conflict with the apparent purpose had in view by the lawmakers.''

The rule is likewise well established that courts are given no legislative power, and if the legislative intent is not reasonably expressed, or cannot, by reasonable rules of construction, be ascertained and given effect, courts are not authorized to insert omitted provisions or read out of the statute the language therein contained.

It is also the rule of construction that statutes *in pari materia*, that is, statutes relating to the same subject matter, are to be construed together. This subject is clearly expressed in the opinion of this court written by Mr. Justice Hart in the case of *Old Homestead Bakery, Inc.*, v. *Marsh*, 75 Cal. App. 247, pages 258 and 259 [242 Pac. 749]. The rules of construction of statutes *in pari materia* are so clearly set forth therein that reference only thereto is necessary.

The three acts adopted by the legislature in 1933, to which we have referred, deal with alcoholic liquors. Whatever is contained in the later acts differing from the former

acts of the legislature will be given effect, and if any definitions are contained in the last act which conflict with the definitions contained in the first and second acts, the definition in the last act must be held controlling. Thus, section 4 of the act known as "Chapter 658" defined both beer and wine differently from the definition found in the acts known as "Chapter 51" and "Chapter 178". As we are not dealing with any question of the manufacture and sale of beer, we confine our words strictly to the alcoholic beverage involved in this action.

In section 4 of chapter 658, *supra*, the definition of "wine" is given as follows: " 'Wine' means any alcoholic beverage obtained by the fermentation of the natural content of fruits or other agricultural products containing sugar." This definition, being the last in point of time adopted by the legislature, reads out of subdivision "A" of section 1 of chapter 51, and likewise, reads out of subdivision "A" of section 1 of chapter 178, the definition of "wine" therein contained, and those sections must hereafter be read as defining "wine' as contained in the last act of the legislature.

Again, we find no definition of a winery contained in either chapter 51 or chapter 178. In chapter 658, a winery is defined as being an establishment where wine is manufactured, fermented, bottled, or barreled, or in any way prepared. A tax of $10 is imposed upon such an establishment.

■ Keeping in view the definition of "wine" as adopted by the last legislature, and reading that definition into chapters 51 and 178, we then have a basis for giving effect to the excise taxing provisions of those chapters. Section 36, as we have set it forth herein, of chapter 658, is to all intents and purposes read into and made a part of chapter 658, in so far as excise taxes are imposed upon the alcoholic liquor known as wine. It is only commonplace to state that "beverage" is ordinarily understood to mean a liquor suitable for human consumption, irrespective of its alcoholic content. It is thus apparent that the legislature intended to impose an excise tax upon liquor containing an alcoholic content, irrespective of the percentage of alcohol therein.

As the petitioner has not shown a compliance with the various acts of the legislature as construed in this opinion,

484

holding that they all must be read as one act, it follows that the writ of mandate should be denied.    And it is so ordered.

Thompson, J., and Pullen, P. J., concurred.

An application by petitioner to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on May 17, 1934.